IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MF NUT CO., LLC, fka MAC FARMS OF HAWAII, LLC, | ) ) ) | CIVIL NO. 11-00004 LEK-BMK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CONTINENTAL CASUALTY COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NOS. 52,
64], AND VACATING TRIAL DATE**

Before the Court are the following motions: (1)
Plaintiff MF Nut Co., LLC's, formerly known as Mac Farms of
Hawaii, LLC ("Mac Farms") Motion for Partial Summary Judgment as
to Duty to Defend ("Mac Farms' Motion"), filed on May 30, 2012
[dkt. no. 52,] and (2) Defendant Continental Casualty Company's
("Continental") Motion for Summary Judgment ("Continental's
Motion"), filed on July 30, 2012.  [Dkt. no. 64.].[1]

Continental filed its memorandum in opposition to Mac
Farms' Motion ("Continental's Memorandum in Opposition") on
September 25, 2012.  [Dkt. nos. 77 (redacted), 80 (sealed).]  Mac

---

[1] The parties filed their consent to jurisdiction by United
States Magistrate Judge on March 17, 2011 and consented to have
the entire litigation, including trial, before United States
Magistrate Judge Kevin S.C. Chang.  On October 9, 2012, Judge
Chang filed his order of recusal and this matter was subsequently
reassigned on October 22, 2012.

Farms filed its reply ("Mac Farms' Reply") on October 2, 2012. [Dkt. no. 81.]  Mac Farms filed its memorandum in opposition to Continental's Motion on September 25, 2012 ("Mac Farms' Memorandum in Opposition").  [Dkt. no. 77.]  Continental filed its redacted reply on October 2, 2012, [dkt. no. 82,] and its sealed reply on October 3, 2012.  [Dkt. no. 85.]

Both motions came on for hearing on December 17, 2012. Appearing on behalf of Mac Farms was Richard B. Miller, Esq., and David R. Harada-Stone, Esq., and appearing on behalf of Continental was David Ronald Major, Esq., and Christopher R. Carroll, Esq.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the Court HEREBY DENIES Mac Farms' Motion and GRANTS Continental's Motion.

## BACKGROUND

Prior to August 2008, Mac Farms "grew and harvested macadamia nuts on its farm in South Kona on the Island of Hawaii." [Complaint at ¶ 16.]  Mac Farms had a contract with Global Horizons, Inc., a California corporation doing business as Agri Labor LLC ("Global Horizons") to provide seasonal laborers to supplement Mac Farms' workforce.  Global Horizons provided Mac Farms with laborers from October 2004 through March 2007.  [Id. at ¶ 17.]

Continental issued Mac Farms an "Epack" Insurance Policy, No. 287240960, originally effective May 1, 2008 through June 27, 2009 ("the Policy"). Endorsement No. 18, effective August 11, 2008, amended the Policy's expiration date to August 11, 2008. Endorsement No. 19, also effective August 11, 2008, provided for an extended reporting period through August 11, 2010. The Policy is a "claims made" policy. The "Insuring Agreement" in the Policy provides:

> The Insurer shall pay on behalf of Named Company, any Subsidiary, any Plan or any Insured Person Loss resulting from any Claim first made against the Named Company Insureds during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act by such Named Company Insured or by any natural person for whose Wrongful Act such Named Company Insured is legally responsible.

[Policy at CCC 00020 (emphases omitted).] The limit for the Employment Practices Liability ("EPL") coverage part is $1,000,000, with a $25,000 retention. [Id. at CCC 00008.]

The Policy defines a "claim" as "a written demand for monetary damages" or "a formal civil, administrative, or regulatory proceeding or investigation or an arbitration[.]" [Id. at CCC 00024.] A "wrongful act" is defined as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the Insured Persons in their capacity as such or by Named Company or any Subsidiary." [Id. (emphases omitted).] A "wrongful

employment practice" is defined as "any Wrongful Act constituted or relating to[,]" *inter alia*

> violation of any federal, state or local laws (whether common-law or statutory) concerning employment or discrimination in employment, including the Americans with Disabilities Act of 1992, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866[.]

[Id. at CCC 00025 (emphasis omitted).]

On or about April 18, 2006, three Global Horizons employees filed Equal Employment Opportunity Commission ("EEOC") charges against Global Horizons and Mac Farms.  Between April 18, 2006 and August 13, 2008, 28 more employees filed charges against Mac Farms.  The charges alleged national origin discrimination and retaliation for engaging in protected activity, both in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").  In a letter dated August 6, 2008, Mac Farms' counsel, Barbara Petrus, Esq., of the law firm Goodsill Anderson Quinn & Stifel, LLP ("Goodsill Anderson"), tendered the defense of the 31 EEOC charges to Continental.  Ms. Petrus submitted copies of the charges and responses with the tender letter.  The charges and responses reflected that some of the charges' filing dates were before the effective date of the Policy, and some were after the effective date.

In an August 28, 2008 telephone conversation, Bryna Stiefel, a Continental claim manager, informed Ms. Petrus

4

that Continental was accepting the tender and would pay for

Goodsill Anderson to defend Mac Farms.[2]  Between September 4,

2008 and July 9, 2009, Mac Farms, through Goodsill Anderson,

tendered the defense of an additional 10 EEOC charges to

Continental.  Thus, the total number of charges tendered was 41

(all collectively "the EEOC Charges" brought by "the Charging

Parties").  Goodsill Anderson continued to defend Mac Farms and

sent its invoices to Continental.  There were delays in the

payment of some invoices but, until August 3, 2010, Continental

never disputed coverage and did not indicate that it was

defending Mac Farms pursuant to a reservation of rights.

[Separate Concise Statement in Supp. of Mac Farms' Motion, filed

5/30/12 (dkt. no. 53) ("Mac Farms' CSOF"), Decl. of Barbara A.

Petrus ("Petrus Decl.") at ¶¶ 8-9.]

On or about July 23, 2010, the EEOC issued a

determination as to eight of the charges that it had reason to

believe Mac Farms had engaged in illegal discrimination.  On or

about August 3, 2010, Ms. Petrus's associate, Shannon Sagum,

Esq., told Ms. Petrus that Ms. Stiefel had informed her that

---

[2] Mac Farms notes that Continental has claimed it sent a
reservation of rights letter to Mac Farms on or about October 23,
2008.  Ms. Stiefel, however, stated that the letter was addressed
to an executive who she knew no longer worked for Mac Farms and
that she overlooked the name of the proper contact person.  She
also stated that the letter was not sent via certified mail and
therefore she had no knowledge of whether anyone at Mac Farms
ever received it.  [Mem. in Supp. of Mac Farms' Motion at 12
n.2.]

Continental would be issuing a reservation of rights letter. [Petrus Decl. at ¶¶ 11-12.]  On or about August 6, 2010, the EEOC issued its determination as to the remaining charges, also concluding that it had reason to believe that Mac Farms had engaged in illegal discrimination as to those charging parties. [Id. at ¶ 13.]  The two determination letters state:

> The Commission has determined that there is reasonable cause to believe that Charging Party and similarly situated individuals were discriminated against due to their national origin (Thai).  The Commission has also determined that there is reasonable cause to believe that Charging Party and similarly situated individuals were subjected to harassment, subjected to different terms & conditions of employment, and intimidated because of their national origin (Thai).

> .  .  .  .

> Therefore, I have concluded that the evidence is sufficient to establish a violation of the statute under Title VII of the Civil Rights Act of 1964, as amended.

[Continental's Separate and Concise Statement in Supp. of Continental's Motion, filed 7/30/12 (dkt. no. 66) ("Continental's CSOF"), Decl. of Bryna J. Stiefel ("Stiefel Declaration"), Exh. D at CCC 00497-98 (7/23/10 determination letter), CCC 00554-55 (8/6/10 determination letter).]

On August 27, 2010, the EEOC sent Mac Farms and Global Horizons a conciliation proposal which included, *inter alia*, a $12,865,000.00 settlement.  Goodsill Anderson repeatedly tried to discuss the proposal with Continental, but Ms. Stiefel would not

discuss it, other than to ask Goodsill Anderson to request an extension of the deadline to respond to the conciliation proposal.  Goodsill Anderson obtained an extension until September 14, 2010.  Ms. Petrus believed that the purpose of the extension was to allow Continental to review the proposal and discuss it with Mac Farms and Goodsill Anderson.  During a September 14, 2010 telephone call which had been scheduled to discuss the proposal, Ms. Stiefel advised Ms. Petrus and Ms. Sagum that Continental was denying coverage for the EEOC Charges and withdrawing its defense.  Goodsill Anderson has continued to defend Mac Farms.  [Petrus Decl. at ¶¶ 14-18.]

Continental sent Mac Farms' general counsel a formal letter of denial dated September 27, 2010.  [Mac Farms' CSOF, Decl. of David R. Harada-Stone ("Harada-Stone Decl."), Exh. 8.] It states that all of the EEOC Charges "arise out of the same 'wrongful acts,' and are, therefore 'interrelated wrongful acts,' and one single Claim[,]" which is deemed to have been made on the date of the earliest claim.  [Id. at 000052.]  The first claim was filed on April 26, 2006, which was prior to the effective period of the Policy and therefore there is no coverage for the single Claim.  [Id.]

On April 19, 2011, the EEOC filed a Complaint against various defendants, including Global Horizons and Mac Farms. [EEOC v. Global Horizons, Inc., et al., CV 11-00257 LEK-RLP

7

("EEOC v. Global Horizons"), (dkt. no. 1).][3]   The current version

of the complaint in that case is the Third Amended Complaint.

[EEOC v. Global Horizons, filed 7/2/12 (dkt. no. 263).]   The

Third Amended Complaint alleges:

> 40.   At all relevant times, Defendant Mac Farms has continuously been under contract with Defendant Global for services rendered in Hawaii, and has continuously been a joint employer with Defendant Global where both generally controlled the terms and conditions of the employment of Suthat Promnonsri and other individuals.

> 41.   Global and Mac Farms jointly controlled the Claimants' work, housing, transportation, and access to food; jointly supervised the Claimants and/or Mac Farms exercised successively higher authority over Global and the Claimants; jointly determined the pay rates or the methods of payment; jointly held the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; jointly participated in the preparation of payroll and the payment of wages.

> 42.   Mac Farms' joint employer liability also stems from Mac Farms' ownership or control of the land, housing, transportation, and worksite, which placed it in a position to prevent the violations of Title VII alleged herein, even through it delegated hiring and some supervisory responsibilities to Global.

> 43.   The Claimants were economically dependent on Mac Farms due to Mac Farms' investment in equipment and facilities.

> 44.   At Mac Farms, the Claimants performed routine tasks that are a normal and integral phase of the Mac Farms' production making them dependent

---

[3] On November 15, 2012, the EEOC v. Global Horizons case was reassigned to this Court.  [Dkt. no. 418.]

on the Mac Farms' overall production process.

45. Mac Farms maintained on-the-job control over Claimants through Mac Farms' own personnel and Global and on-site crew leaders who in turn spoke directly to the Claimants.

[EEOC v. Global Horizons, Third Amended Complaint at ¶¶ 41-45.] The Third Amended Complaint alleges that Mac Farms engaged in misconduct and/or discrimination against the Claimants[4] by: providing uninhabitable housing; refusing to take them to the store to buy food to eat; failing to act when it was aware that Global Horizons was not paying them; failing to investigate when it was aware that some of them were running away; imposing quotas; restricting their movements at the farm and preventing them from leaving the farm; verbally abusing them; imposing exorbitant and/or unlawful recruitment fees; confiscating their passports; giving them demeaning job assignments; threatening them, including threats of deportation; intimidating them; and retaliating against them for engaging in protected activity. [Id. at ¶¶ 193-200, 240-43, 257-66.] The Third Amended Complaint also alleges that Mac Farms failed to investigate Global Horizons' credentials, in spite of the fact that Mac Farms was

---

[4] The Third Amended Complaint states that approximately 159 Claimants worked at Mac Farms' from 2004 to 2007 "and experienced the above-described pattern or practice of discrimination." [EEOC v. Global Horizons, Third Amended Complaint at ¶ 268.] The Third Amended Complaint notes: "Forty-one Claimants filed Charges of Discrimination against Mac Farms not including class members." [Id. at ¶ 267.]

aware of the need to do so.  [Id. at ¶ 212.]  The Third Amended Complaint alleges that Mac Farms discriminated against the Charging Parties based on their race/national origin (Thai/Asian) and that non-Thai workers, including Vietnamese, Filipino, and Mexican workers were not subjected to the same conditions.  [Id. at ¶¶ 221, 223.]

On January 4, 2011, Mac Farms filed the instant insurance coverage action against Continental, based on diversity jurisdiction.  Count I of the Complaint seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that Mac Farms is entitled to a defense and indemnification from Continental in the underlying proceedings.  [Complaint at ¶¶ 37-46.]  Count II alleges that Continental breached its insurance contract with Mac Farms by withdrawing its defense and disclaiming any obligation of indemnification.  [Id. at ¶¶ 47-51.]  Count III alleges that Continental waived any defenses to coverage when it accepted Mac Farms' tender without a reservation of rights and that Mac Farms detrimentally relied on Continental's acceptance of the tender. Mac Farms therefore contends that Continental is now estopped from withdrawing its defense and/or from denying its indemnity obligations.  [Id. at ¶¶ 52-58.]  Count IV alleges an insurance bad faith claim.  [Id. at ¶¶ 59-64.]  Mac Farms seeks: a declaratory judgment that Continental has a duty to defend and indemnify; an order requiring Continental to immediately resume

Mac Farms' defense; reimbursement of the attorneys' fees and
costs incurred in the defense of Mac Farms after the withdrawal
(including outstanding fees and costs at the time of the
withdrawal); an order requiring Continental to indemnify Mac
Farms for any amounts paid to settle the underlying charges or to
satisfy any resulting judgment, even if the amount exceeds the
policy's limitations; compensatory damages; punitive damages;
reasonable attorneys' fees and costs; and any other appropriate
relief.

## I.   **Mac Farms' Arguments**

In the instant motion, Mac Farms first argues that the
Interrelated Wrongful Acts Exclusion of the Policy does not
preclude coverage, and that courts have ruled that language such
as the Policy's definition of "interrelated wrongful acts" is
ambiguous.

Mac Farms emphasizes that the EEOC Charges involve 41
different employees who worked at Mac Farms during different time
periods, and that the Third Amended Complaint includes numerous
allegations that only apply to certain of the claimants, and that
there is no way to establish that all of the claims asserted by
the 159 former Mac Farms workers arose from "interrelated
wrongful acts."  The mere fact that the 41 EEOC Charges use the
same boilerplate language and the Charging Parties are all Thai
nationals is not enough.  Thus, Mac Farms argues that evaluation

11

of the EEOC Charges requires an evaluation of the facts specific to each employee.  Mac Farms asserts that the allegations in the EEOC Charges and in the EEOC's complaint in EEOC v. Global Horizons are vague, prohibiting any finding that all of the EEOC Charges are logically or causally connected.  Further, Mac Farms emphasizes that many of the EEOC Charges were filed after the effective date of the Policy.  Mac Farms therefore argues that Continental has a continuing duty to defend.

Mac Farms also argues that, although an insurance company may initially assume an unconditional defense while it investigates the existence of coverage, it must promptly provide a reservation of rights after it receives information raising the possible absence of coverage.  Mac Farm emphasizes that Continental provided Mac Farms with an unconditional defense for two years, even though it knew or should have known at the time of tender that the first of the EEOC Charges were filed prior to the effective date of the Policy, and that Continental then withdrew coverage without meaningful warning.  Mac Farms emphasizes that the October 23, 2008 reservation of rights letter ("10/23/08 Reservation of Rights Letter") is ineffective.  At the time the EEOC's conciliation proposal was pending and Mac Farms was relying on Continental's input and assistance to address the proposal.  Thus, Mac Farms argues that Continental's withdrawal was prejudicial because it deprived Mac Farms of the opportunity

12

to resolve the matter before the EEOC's referral to regional counsel and the filing of the civil complaint.  This is unchanged by the fact that Travelers is providing Mac Farms' defense under Mac Farms' policy with Travelers Casualty and Surety Company of America ("the Travelers Policy"), as it is possible that defense costs will exhaust the limits of that policy.  Further, Travelers has reserved its rights to contest its indemnity liability and has reserved the issue whether claims are interrelated or may be covered by two successive policies.  Mac Farms therefore argues that Continental has waived its right to and/or is estopped form denying coverage to Mac Farms in this matter.

Finally, Mac Farms argues that there is a genuine issue of material fact with respect to its claim for breach of the covenant of good faith and fair dealing.  It states that Ms. Stiefel's admissions that the reservation of rights letter was addressed to the wrong person and that she has no documentary evidence that it was ever mailed or delivered give rise to a fact issue precluding summary judgment for Continental.  Mac Farms argues that, viewing the record in the light most favorable to the non-moving party, and drawing all justifiable inferences in its favor, the record indicates that Continental accepted Mac Farms tender without a reservation of rights and did not raise any coverage questions for two years, but then, "using the ruse of taking the time to consider and respond to the EEOC's demand,

when, in reality, it was attempting to justify and document its forthcoming denial of coverage." [Mem. in Opp. to Continental Motion at 36.]

## II. **Continental's Arguments**

Continental argues that there is no evidence that would permit a rational trier of fact to resolve the coverage dispute in Mac Farms' favor because there is no potential for coverage under the Policy: although some of the later EEOC Charges were filed within the Policy period, all of them arise from "interrelated wrongful acts" and are deemed to be a single claim first made on April 18, 2006 (the date the first EEOC Charges were filed), prior to the beginning of coverage on May 1, 2008. Continental emphasizes that all of the EEOC Charges allege the same basic acts occurring from 2004 through 2007, that the EEOC presented one global conciliation proposal, which allocated the damage equally among the Charging Parties, and that EEOC v. Global Horizons is premised upon all of the 41 EEOC Charges. Thus, Continental contends that all of the EEOC Charges and EEOC v. Global Horizons are a single claim for purposes of the Policy.

As to Mac Farms' argument that the "interrelated wrongful acts" provision is ambiguous, Continental points out that none of the policies at issue in the four cases cited in Mac Farms' Motion contained a definition of "interrelated wrongful acts" as the instant Policy does. Continental cites a number of

14

cases holding that definitions of "interrelated wrongful acts" similar to the definition in the instant Policy were unambiguous and that EEOC lawsuits relate back to the filing date of the first EEOC charge.  See, e.g., WFS Financial, Inc. v. Progressive Casualty Insurance Co., Inc., No. 05-55854, 2007 WL 1113347 (9th Cir. Apr. 16, 2007); Cracker Barrel Old Country Store, Inc. v. Cincinnati Insurance Co., No. 11-6306, 2012 WL 3932814, at *7 (6th Cir. Sept. 10, 2012)).]

Continental argues that the facts giving rise to the EEOC Charges are indisputably similar.  They involve seasonal laborers who Global Horizons provided to Mac Farms; they allege harassment, discrimination, intimidation, and retaliation based on the workers' Thai national origin; the EEOC made a reasonable cause determination as to each charge; the EEOC presented a global conciliation proposal with an equal amount of damages allocated to each Charging Party; and EEOC v. Global Horizons encompasses all of the charges and alleges a pattern and practice of retaliation.

Continental notes that the first of the EEOC Charges was filed on April 18, 2006, more than two years prior to the Policy period and during the period of the Travelers' Policy. Continental argues that Travelers' agreement to provide coverage is evidence that the matters are related and relate back to April 18, 2006, during the period of the Travelers Policy.

15

As to Mac Farms' waiver and estoppel arguments, Continental argues that Mac Farms' claim that Continental did not review the EEOC Charges until 2010 is inaccurate. Continental points out that the tender letter identified the date of loss as August 12, 2008. Its claims representative reviewed the charges, noted that some were made during the Policy period, and determined that the EEOC Charges were all identical. The claims representative, however, did not realize that some of the charges were filed prior to the Policy period. [Continental Mem. in Opp. at 12-13.]

Continental also emphasizes the 10/23/08 Reservation of Rights Letter in which it advised Mac Farms that the charges appeared to arise from the same facts and may be deemed a single claim under the Policy and included a general reservation of rights. Continental therefore denies that it unequivocally or unconditionally accepted the tender of Mac Farms' defense. Continental argues that it is irrelevant that the 10/23/08 Reservation of Rights Letter was addressed to a former Mac Farms executive because it was issued to Mac Farms' headquarters at the address listed on Policy documents. [Id. at 13-14.]

Continental emphasizes that it allowed Mac Farms to continue to use its chosen counsel, Goodsill Anderson, even though Continental had the right to select defense counsel. Goodsill Anderson's communications to Continental suggested that

16

the EEOC Charges were meritless and did not require significant attention from Continental.  Continental later learned of the Federal Bureau of Investigation's ("FBI") investigation of Mac Farms' employment of Thai workers.  Continental then reviewed the EEOC Charges and determined that some were made in 2006, not in 2008 as indicated on the notice of loss.  Continental asserts that it promptly retained coverage counsel and disclaimed coverage.  [Id. at 14-15.]

Continental argues that the pendency of the EEOC conciliation proposal at the time of the disclaimer is irrelevant because it advised Mac Farms' counsel on August 3, 2010 that it was reviewing coverage.  This was prior to the issuance of the conciliation proposal.  Thus, the proposal could not have prompted the denial.  Further, the Policy has a $1 million limit, including defense costs, for employment practices liability, and the resolution would have required Mac Farms to contribute its own funds.  Continental therefore argues that it did not deprive Mac Farms of any opportunity to resolve the case early because it could pursue settlement on its own or through its Travelers Policy, which Mac Farms ultimately did.  Travelers has agreed to fully defend Mac Farms for EEOC v. Global Horizons, and has reimbursed Mac Farms for its out-of-pocket expenses in connection with the defense of the EEOC Charges.  Mac Farms also has the right to seek indemnity for coverage for EEOC v. Global Horizons

17

from Travelers.  Continental argues that, because Mac Farms has full coverage from Travelers, Mac Farms has not been prejudiced by Continental's withdrawal of coverage. [Id. at 15-17.]

Finally, Continental argues that waiver and estoppel cannot expand the scope of bargained for coverage under an insurance policy.  Further, there are no technical or forfeiture grounds that Continental may waive or be estopped from asserting. Continental acted in good faith and did not prejudice Mac Farms. Estoppel therefore does not preclude Continental from asserting valid defenses to coverage.  [Id. at 17-18 (citing Enoka v. AIG Hawaii Ins. Co., Inc., 128 P.3d 850, 867, 869 (Haw. 2006)).]

Finally, Continental notes that Mac Farms did not move for summary judgment on its bad faith claim, and that the Court should rule that it did not act in bad faith as a matter of law. It argues that it did not act unreasonably in disclaiming coverage because case law supports its positions on the application of the "interrelated wrongful acts" and "prior notice" exclusion.  [Continental Reply at 15-17.]

## DISCUSSION

I.  **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>Celotex [Corp. v. Catrett]</u>, 477 U.S. [317,] 323 [(1986)].  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323). "A fact is material if it could affect the outcome of the suit under the governing substantive law."  <u>Miller [v. Glenn Miller Prods., Inc.]</u>, 454 F.3d [975,] 987 [(9th Cir. 2006)].

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. <u>Nissan Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  <u>Miller</u>, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000)

("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

Rodriguez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations omitted).

## II.  Applicable Law Regarding Insurance Contract Interpretation

Federal jurisdiction in this case is based on diversity.  This district court has recognized that:

Federal courts sitting in diversity apply state substantive law and federal procedural law. See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."); Zamani v. Carnes, 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." (quotations omitted)).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Estate of Rogers v. Am. Reliable Ins. Co., Civil No. 10-00482

SOM/RLP, 2011 WL 2693355, at *3 (D. Hawai`i July 8, 2011).

### A.  General Principles Under Hawai`i Law

          The Hawai`i Supreme Court has set forth the following

principles applicable in the interpretation of insurance

contracts:

>           [I]nsurers have the same rights as
> individuals to limit their liability and to impose
> whatever conditions they please on their
> obligation, provided they are not in contravention
> of statutory inhibitions or public policy.  As
> such, insurance policies are subject to the
> general rules of contract construction; the terms
> of the policy should be interpreted according to
> their plain, ordinary, and accepted sense in
> common speech unless it appears from the policy
> that a different meaning is intended.  Moreover,
> every insurance contract shall be construed
> according to the entirety of its terms and
> conditions as set forth in the policy.
>           Nevertheless, adherence to the plain language
> and literal meaning of insurance contract
> provisions is not without limitation.  We have
> acknowledged that because insurance policies are
> contracts of adhesion and are premised on standard
> forms prepared by the insurer's attorneys, we have
> long subscribed to the principle that they must be
> construed liberally in favor of the insured and
> any ambiguities must be resolved against the
> insurer.  Put another way, the rule is that
> policies are to be construed in accord with the
> reasonable expectations of a layperson.

Guajardo v. AIG Hawai`i Ins. Co., Inc., 118 Hawai`i 196, 201-02,

187 P.3d 580, 585-86 (2008) (alteration in Guajardo) (quoting

Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i 398, 411-12,

992 P.2d 93, 106-07 (2000)).  The Hawai`i Supreme Court has also

stated: "[t]he objectively reasonable expectations of

[policyholders] and intended beneficiaries regarding the terms of

insurance contracts will be honored even though painstaking study

of the policy provisions would have negated those expectations.

These 'reasonable expectations' are derived from the insurance

policy itself . . . ." <u>Del Monte Fresh Produce (Hawaii), Inc. v.</u>

<u>Fireman's Fund Ins. Co.</u>, 117 Hawai`i 357, 368, 183 P.3d 734, 745

(2007) (citations and some quotation marks omitted) (some

alterations in original).

Under the principles of general contract

interpretation, "[a] contract is ambiguous when the terms of the

contract are reasonably susceptible to more than one meaning."

<u>Airgo, Inc. v. Horizon Cargo Transport Inc.</u>, 66 Haw. 590, 594,

670 P.2d 1277, 1280 (1983).

> It is well settled that courts should not draw
> inferences from a contract regarding the parties'
> intent when the contract is definite and
> unambiguous.  In fact, contractual terms should be
> interpreted according to their plain, ordinary
> meaning and accepted use in common speech.  The
> court should look no further than the four corners
> of the document to determine whether an ambiguity
> exists.  Consequently, the parties' disagreement
> as to the meaning of a contract or its terms does
> not render clear language ambiguous.

<u>State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.</u>, 90 Hawai`i

315, 324, 978 P.2d 753, 762 (1999) (citations omitted).

### III. <u>Duty to Defend & Duty to Indemnify</u>

In its motion, Mac Farms argues that Continental has a

duty to defend it under the Policy.  This district court has

summarized the following relevant aspects of Hawai`i law

regarding the duty to defend and the duty to indemnify.

> The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration); Crawley v. State Farm Mut. Auto. Ins. Co., 90 Haw. 478, 483, 979 P.2d 74, 79 (App. 1999).  The insurer has the burden of establishing the applicability of an exclusion.  See Sentinel, 76 Haw. at 297, 875 P.2d at 914.
>
> The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage. Sentinel, 76 Haw. at 287, 875 P.2d at 904; accord Haole v. State, 111 Haw. 144, 151, 140 P.3d 377, 384 (2006) ("if there is no potential for indemnification, then no duty to defend will arise").  However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend. Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Haw. 286, 291, 994 P.2d 83, 88 (Haw. Ct. App. 1997)).  In other words, for [the insurer] to have no duty to defend, it must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the policy.  See Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

Estate of Rogers, 2011 WL 2693355, at *4.  The Hawai`i Supreme

Court has emphasized that the duty to defend applies even if the

possibility of coverage is "remote".  Tri-S Corp. v. Western

World Ins. Co., 110 Hawai`i 473, 488, 135 P.3d 82, 97 (2006).

Further, "[a]ll doubts as to whether a duty to defend exists are

resolved against the insurer and in favor of the insured." Id.

"[T]he duties to defend and indemnify arise under the terms of the insurance policy, and it is through an interpretation of the terms of the policy that such duties are deemed to be owed." Del Monte Fresh Produce, 117 Hawai`i at 369-70, 183 P.3d at 746-47 (citation omitted).

Continental argues that, because of the Interrelated Wrongful Acts Exclusion in the Policy, it has no duty to defend or indemnify. Specifically, Continental asserts that a threshold requirement for coverage is that the claim was made during the Policy period of May 1, 2008 to August 11, 2008; however, the first EEOC Charges were filed on April 18, 2006, and, while some of the later EEOC Charges were filed within the Policy period, all of them arise from "interrelated wrongful acts" and are thus deemed to be a single claim first made on April 18, 2006, outside the Policy period.

As noted previously, the Policy defines "Interrelated Wrongful Acts" as "any Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event." [Policy at CCC 00011 (emphases omitted).] A "Wrongful Act" is defined under the Policy as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the Insured Persons in their capacity as such or by Named Company or

24

any Subsidiary." [Id. at CCC 00024 (emphases omitted).]

Mac Farms argues that the Policy's language is ambiguous, and cites a number of cases to support this proposition. These cases, however, are distinguishable from the instant case in that they dealt with policies that did not expressly define the term "interrelated wrongful acts," while the Policy here contains just such a definition. See, e.g., American Home Assur. Co. v. Allen, 814 N.E.2d 662 (Ind. App. 2004) (finding ambiguous an undefined "interrelated wrongful acts" term). Although no Hawai`i court has yet addressed the scope of an "interrelated wrongful acts" provision, a significant number of courts have concluded that nearly identical provisions are clear and unambiguous. See, e.g., WFS Financial, Inc. v. Progressive Casualty Insurance Co., Inc., No. 05-55854, 2007 WL 1113347 (9th Cir. Apr. 16, 2007); Berry & Murphy, P.C. v. Carolina Cas. Ins. Co., 586 F.3d 803, 810-811 (10th Cir. 2009); Highwoods Props., Inc. v. Exec. Risk Indem. Inc., 407 F.3d 917, 925 (8th Cir. 2005); Bryan Bros Inc. v. Continental Cas. Co., 704 F. Supp. 2d 537 (E.D. Va. 2010), aff'd, 660 F.3d 827 (4th Cir. 2011)). The instant Policy has a clear, broad definition of the term "interrelated wrongful acts." This Court finds that the provision is not ambiguous, and will therefore interpret it in accordance with its plain meaning.

25

Mac Farms argues that the EEOC Charges cannot be considered "interrelated wrongful acts" under the Policy because they involve 41 different employees who worked at Mac Farms during different time periods.  Numerous courts have held, however, that interrelated wrongful act claims may be triggered regardless of the number of claimants or the number of transactions at issue.  See Berry & Murphy, 586 F.3d at 811-14 (10th Cir. 2009); Continental Cas. Co. v. Wendt, 205 F.3d 1258 (11th Cir. 2000); Gregory v. The Home Ins. Co., 876 F.2d 602 (7th Cir. 1989); Brecek and Young Advisors, Inc. v. Syndicate 2003, Lloyd's of London, et al., No. 4:11CV3003, 2012 WL 5569242 (D. Neb. Dec. 24, 2012).

Further, as the court in Brecek stated, courts view "interrelated wrongful acts" provisions differently depending on whether the term is further defined in the relevant policy: "When the term is not defined, it is construed narrowly and more significant overlap is necessary before claims will be deemed interrelated."  2012 WL 5569242 at *12 (citations omitted).  When the term is defined broadly, as it is in the instant Policy, "courts have been much more willing to find acts to be 'interrelated.'"  Id. (citations and quotation marks omitted).

Mac Farms asserts that the allegations in the EEOC Charges and in the EEOC's complaint in EEOC v. Global Horizons are vague, prohibiting any finding that all of the EEOC Charges

are logically or causally connected.  Upon close examination, it is clear that all of the EEOC Charges allege the same basic acts occurred from 2004 through 2007; involve seasonal laborers provided to Mac Farms by Global Horizons; and allege harassment, discrimination, intimidation, and retaliation based on the workers' Thai national origin.  The EEOC made a reasonable cause determination as to each of these charges, presented a global conciliation proposal with an equal amount of damages allocated to each Charging Party, and filed the ensuing litigation, <u>EEOC v. Global Horizons</u>, which encompasses all of these charges, and alleges a pattern and practice of retaliation as to all charges.

In light of these facts, and the fact that the Policy broadly defines the term "interrelated wrongful acts," the Court finds that all of the EEOC charges and the acts underlying the EEOC Complaint constitute "interrelated wrongful acts" as defined by the Policy.  The first EEOC Charges were filed on April 18, 2006, which is prior to the beginning of coverage on May 1, 2008. Although some of the later EEOC Charges were filed within the Policy period, all of them arise from "interrelated wrongful acts" and are thus deemed to be a single claim first made on April 18, 2006.  As such, this Court finds that Continental does not have a duty to defend under the Policy.

**IV.  <u>Estoppel</u>**

Mac Farms argues that Continental is estoped from

denying its duty to defend under the Policy.  In <u>Sentinel Insurance Co., Ltd. v. First Insurance Co. of Hawai'i, Ltd.</u>, 76 Hawai'i 277, 875 P.2d 894 (1994), the Hawai'i Supreme Court discussed the application of estoppel to an insurer's decision whether or not to defend and the effect of a change of position:

> The proffered bases for applying such a rule have included: (1) the insurer's failure to preserve the coverage defense by defending under a reservation of rights or seeking declaratory relief on its duty to defend . . . ; (2) the inequity of allowing the insurer to benefit from policy provisions and exclusions after the insurer has shirked its responsibilities thereunder. . . ; or (3) the similar inequity of allowing the insurer to second-guess the defense undertaken as a result of its breach.
>
> . . . .
>
> Further, we fail to see how there can be an estoppel in a case where the insurer refuses to defend by taking the position that there is no coverage under the policy and then maintains that same position in defending the insured's suit for indemnification.  In that situation, "no estoppel is involved in any traditional sense because, in refusing to defend a claim, an insurer makes no misrepresentation on which the insured relies to its detriment."  Blanket application of coverage by waiver or estoppel, on the contrary, would result in the insured receiving a windfall.  The insured would obtain a benefit it did not bargain for where the facts developed in discovery or at trial after the duty to defend has been breached establishes that the insured was not entitled to coverage.  As one scholar of insurance has noted:
>
>> Where there is no coverage, the greatest injury that the insured could have suffered by a failure to defend is the cost of defense – the judgment would have been his responsibility regardless.  [Courts holding to the contrary] apparently rel[y] on

28

estoppel and . . . breach of contract.  Since
the insured was in no way misled there could
be no estoppel.  A breach of contract of
course waives a forfeiture but it does not
nor should it create a new contract.

[7C J.] Appleman, [Insurance Law and Practice,] §
4689, at 215 n.13 [(1979)].

. . . .

Certainly, in individual cases, the
application of waiver or estoppel will be
appropriate - for example, where the insured has
been prejudiced in some way by the insurer's
failure to provide a defense. . . , or where the
insurer has taken inconsistent positions with
regard to defense and coverage.  See, e.g.,
Tomerlin v. Canadian Indem. Co., 61 Cal.2d 638,
394 P.2d 571, 39 Cal. Rptr. 731 (1964) (insured
relinquished personal attorney's representation
when agent for insurer represented that insurer
was liable for coverage and would abandon
reservation of rights).

76 Hawai'i at 295-96, 875 P.2d at 912-13 (some citations

omitted).

Absent manifest injustice, "the party invoking

equitable estoppel must show that he or she has detrimentally

relied on the representation or conduct of the person sought to

be estopped, and that such reliance was reasonable."  AIG Hawai'i

Ins. Co. v. Smith, 78 Hawai'i 174, 179, 891 P.2d 261, 266 (1995)

(emphasis in original) (quotation marks omitted).

Mac Farms argues that Continental is estopped from

denying its duty to defend under the Policy because Continental

provided Mac Farms with a defense for two years before

withdrawing coverage without meaningful warning.  Mac Farms

29

argues that the 10/23/08 Reservation of Rights Letter was ineffective, as it was never received.  The letter was apparently sent to Mac Farms' address as set forth on Policy documents, but was never received because the insured had a change in address, of which Continental was not aware.  [Continental Mem. in Opp. at 13-14 (citing 10/23/08 Reservation of Rights Letter; Policy at CCC 00006; Stiefel Decl., Exh. K).]  Based on the record, the Court finds no evidence that Continental provided a reservation of rights letter that was received by Mac Farms.

To succeed on its estoppel claim, however, Mac Farms must demonstrate that it relied on Continental to its detriment, and that such reliance was reasonable.  AIG Hawai'i Ins. Co., 78 Hawai'i at 179.  It has failed to do so.  The Court finds no evidence that Mac Farms suffered any detriment or was prejudiced because of Continental's withdrawal of its defense.  Even though Continental had a right to select defense counsel, Mac Farms was allowed to continue with its choice of counsel, Goodsill Anderson.  Travelers has agreed to fully defend Mac Farms under its policy.  Mac Farms has thus failed to demonstrate that Continental's withdrawal prejudiced it or deprived it of any opportunity to pursue a settlement with the EEOC.  Further, under Hawai`i law, waiver and estoppel may not be used to broaden the coverage of an insurance policy beyond what the insured bargained for.  See Enoka v. AIG Hawaii Ins. Co., Inc., 128 P.3d 850, 867,

869 (Haw. 2006).  As such, this Court finds that Continental is
not estopped from denying its duty to defend or indemnify Mac
Farms under the Policy.

**V.    Breach of the Covenant of Good Faith and Fair Dealing**

Finally, Mac Farms argues that there is a genuine issue
of material fact with respect to its claim for breach of the
covenant of good faith and fair dealing.

This Court has characterized similar claims as attempts
to allege claims for the tort of bad faith.  See, e.g., Phillips
v. Bank of Am., Civil No. 10-0051 JMS-KSC, 2011 WL 240813, at *5
(D. Hawai`i Jan. 21, 2011) (citing Best Place v. Penn Am. Ins.
Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of
bad faith for breach of implied covenant of good faith and fair
dealing in an insurance contract)).

As the Hawai`i Supreme Court stated in Miller v.
Hartford Life Insurance Co., 126 Hawai`i 165, 178, 268 P.3d 418,
431 (2011):

> The burden of proof for bad faith liability is not
> insubstantial.  As we stated in Best Place [v. Penn
> America Insurance Co., 82 Hawai`i 120, 920 P.2d 334
> (1996)], an insurer's conduct that is based on an
> interpretation of the insurance contract that is
> reasonable does not constitute bad faith; moreover, an
> erroneous decision not to pay a claim for benefits due
> under a policy does not by itself prove liability.
> Rather, the decision not to pay a claim must be in "bad
> faith" in order to prove liability.

See also Enoka v. AIG Hawaii Ins. Co., 109 Hawai`i 537, 552, 128
P.3d 850, 865 (2006) ("where an insurer denies the payment of

no-fault benefits based on 'an open question of law,' there is 'obviously no bad faith on the part of the insurer in litigating that issue'" (citation omitted)).

Here, Mac Farms has failed to demonstrate that Continental acted in bad faith.  Notwithstanding the lack of evidence that a reservation of rights letter was ever sent by Continental and received by Mac Farms, Continental did not act unreasonably or in bad faith, as it denied coverage based upon the reasonable belief that the Policy's Interrelated Wrongful Acts Exclusion precluded coverage.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Mac Farms' Motion for Partial Summary Judgment as to Duty to Defend, filed on May 30, 2012, is HEREBY DENIED, and Continental's Motion for Summary Judgment, filed on July 30, 2012, is HEREBY GRANTED.  The Clerk's Office is directed to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 14, 2013.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MF NUT CO., LLC, fka MAC FARMS OF HAWAII, LLC V. CONTINENTAL CASUALTY COMPANY; CIVIL NO. 11-00004 LEK-BMK; ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NOS. 52, 64, AND VACATING TRIAL DATE**